UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **STANLEY R PALOWSKY, III** | **CIVIL ACTION NO. 23-760** |
| **VERSUS** | **JUDGE EDWARDS** |
| **DANA BENSON ET AL.** | **MAG. JUDGE MCCLUSKY** |

## MEMORANDUM RULING

Before the Court is a Motion to Dismiss for Failure to State a Claim (R. Doc. 16) filed by Defendants Dana Benson ("Benson") and Louise Bond ("Bond"). Stanley R. Palowsky, III ("Palowsky") filed an opposition (R. Doc. 18). Defendants Benson and Bond (collectively referred to as "Defendants") filed a reply (R. Doc. 22). For the reasons stated below, the Motion to Dismiss is **GRANTED**.

## BACKGROUND

This suit was originally filed in the Fourth Judicial District Court in Ouachita Parish, Louisiana, on May 16, 2023.[1] Palowsky named Louise Bond, the former Ouachita Parish Clerk of Court, and Dana Benson, the current Ouachita Parish Clerk of Court, as Defendants.[2] Palowsky's claims against Defendants involve two sealed envelopes filed into the record of another lawsuit in state court, *Palowsky v. Cork*, No. 13-2059 ("the Cork lawsuit").[3] Palowsky claims that Defendants acted both alone and

---

[1] R. Doc. 1-2 at 1.
[2] *Id.*
[3] *Id.* at 1-2.

1

in concert under color of law to violate Palowsky's due process and equal protection rights guaranteed by the Fourteenth Amendment of the United States Constitution and the Louisiana Constitution, including his right to access court records.[4] Palowsky further claims that Defendants violated various Louisiana criminal law statutes pertaining to legal duties of public employees.[5]

## A. Relevant History

On July 2, 2013, Palowsky filed the Cork lawsuit asserting allegations of racketeering against his former business partner, W. Brandon Cork, in the Fourth Judicial District Court in Ouachita Parish.[6] On July 22, 2015, Palowsky filed another lawsuit in the Fourth Judicial District Court in Ouachita Parish against a law clerk, Allyson Campbell, containing allegations relating to "missing, destroyed and/or mishandled court documents" in the Cork lawsuit ("the Campbell lawsuit").[7] Judge Carl Sharp ("Judge Sharp"), who was presiding over the Cork lawsuit, was then named as a defendant in the Campbell lawsuit.[8] By November 2015, Judge Sharp and the seven remaining Fourth Judicial District Court judges had all recused themselves in the Cork lawsuit.[9]

On November 12, 2015, Defendant Bond, the then Ouachita Parish Clerk of

---

[4] *Id.* at 1.
[5] *Id* at 3-5, 7.
[6] *Id.* at 1–2.
[7] *Id.* at 2.
[8] *Id.*
[9] *Id.*

2

Court, filed two sealed envelopes in the Cork lawsuit record.[10] Several years later, on May 31, 2022, Palowsky allegedly discovered these envelopes for the first time.[11] After Palowsky discovered the two sealed envelopes, Defendant Benson, the current Ouachita Parish Clerk of Court, refused to allow him to see their contents without a court order.[12] The next day, June 1, 2022, Palowsky filed a motion to unseal the envelopes.[13] On June 30, 2022, the presiding judge, Ad Hoc Judge Ronald Cox, granted the motion to unseal and ordered Defendant Benson to unseal and copy the contents for the parties in the Cork lawsuit.[14] Defendant Benson unsealed the envelopes and furnished copies of more than 60 pages of Cork's business records from each envelope. These records were already filed in the record unsealed.[15]

## B. Allegations

### 1. Defendant Bond

Palowsky alleges that Defendant Bond violated his federal and state constitutional rights when she "secretly filed" two envelopes in separate volumes of the Cork lawsuit record.[16] Palowsky also asserts that this alleged act violated numerous Louisiana statutory laws.[17] Palowsky further contends that Defendant Bond filed the sealed envelopes "outside of any legal process" because the envelopes

---

[10] *Id.* at 3; *see also* R. Doc. 1-2 at 14.
[11] *Id.* at 2
[12] *Id.* at 6.
[13] *Id.* at 7.
[14] *Id.*
[15] *Id.*
[16] *Id.* at 3.
[17] *Id.*

3

do not bear a date stamp or signature of a filing clerk and neither contained a court order sealing the contents.[18] Palowsky alleges that the two envelopes contained judicial complaints and were filed into the record of the Cork lawsuit in order to prejudice the mindset of ad hoc judges against Palowsky and to affect the outcome of that case.[19]

### 2. Defendant Benson

Palowsky alleges that Defendant Benson violated his constitutional right to access court records when she refused to show him the contents of the two sealed envelopes.[20] Palowsky also alleges that when he received copies of the envelopes' contents, the original documents (the alleged judicial complaints) had been switched with Cork's business records.[21] To support this assertion, Palowsky cites Defendant Benson's testimony in the Campbell lawsuit that the envelopes in the Cork lawsuit contained "maybe twenty-five, twenty" pages.[22] Palowsky further supports his assertion by alleging that a reporter from the Ouachita Citizen and Palowsky's counsel each viewed and held the sealed envelopes which appeared to contain twenty to twenty-five pages visible through the tattered edges of the sealed envelopes.[23]

---

[18] *Id.*
[19] *Id.* at 5.
[20] *Id.* at 6.
[21] *Id.* at 8.
[22] *Id.* at 7.
[23] *Id.*

### 3. Other Allegations

Palowsky also claims that when rulings in the Cork lawsuit were reviewed by higher courts, both sealed envelopes were removed from the record by "someone" prior to same being sent to the higher courts.[24] Palowsky alleges that after the reviewing courts returned the record to the Fourth Judicial District Court, "yet identified person(s)" secretly re-filed the sealed envelopes in the record.[25]

## LAW AND ANALYSIS

### A. Motion to Dismiss

The instant motion moves the Court to dismiss Palowsky's claims for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[26] A Rule 12(b)(6) motion must be filed before filing an answer.[27] Here, Defendants filed their answer to Palowsky's petition on July 13, 2022, two months prior to filing the instant motion on September 11, 2023.[28] However, Defendants alternatively urge dismissal of this action under Rule 12(c) as a motion for judgment on the pleadings, which may be after the answer.[29] The Court will, therefore, address the instant motion as a Rule 12(c) motion for judgment on the pleadings and apply the same standards as under Rule 12(b)(6).[30]

---

[24] *Id.* at 9.
[25] *Id.* at 6.
[26] R. Doc. 16.
[27] Fed. R. Civ. P. 12(b).
[28] R. Doc. 11; R. Doc. 16.
[29] R. Doc. 24; Fed R. Civ. P. 12(h)(2).
[30] *Delta Truck & Tractor, Inc. v. Navistar Intern. Transp. Corp.*, 833 F. Supp. 587, 588 (W.D. La. 1993) ("[A] motion to dismiss made after the filing of an answer serves the same function as a motion for judgment on the pleadings and may be regarded as one.")

A motion to dismiss under Rule 12(b)(6) is appropriate when the plaintiff fails to state a legally cognizable claim.[31] The moving party has the burden under a Rule 12(b)(6) motion to dismiss.[32] In considering a Rule 12(b)(6) motion to dismiss, the district court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiff[]."[33] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[34] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[35] Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[]n' – 'that the pleader is entitled to relief.'"[36] Importantly, legal conclusions without factual support are not entitled to the presumption of truth.[37] "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."[38]

---

[31] Fed. R. Civ. P. 12(b)(6).
[32] *See Philips N. Am., LLC v. Image Tech. Consulting, LLC*, 22-CV-0147, 2022 WL 17168372, at *7 (N.D. Tex. Nov. 21, 2022).
[33] *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).
[34] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[35] *Id.* (quoting *Twombly*, 550 U.S. at 556).
[36] *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).
[37] *See Young Conservatives of Tex. Found. v. Univ. of N. Tex.*, 569 F.Supp.3d 484, 489 (E.D. Tex. 2021).
[38] *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

**B. Section 1983 Claims**

First, the Court will address the allegations pertaining to federal law. Palowsky brings claims under Section 1983 against Defendants for allegedly violating his right to access the records in the Cork lawsuit. *See* (R. Doc. 1-2 at 10). Section 1983 provides:

> Every person who, under color of any statute, ordinance, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and [federal] laws, shall be liable to the party injured . . . .[39]

In pleading a Section 1983 claim, a plaintiff must allege facts demonstrating that: (1) the defendants violated the Constitution or federal law and (2) the defendants were acting under the color of state law while doing so.[40] While there is no express federal constitutional provision providing for access to judicial records and proceedings, the Supreme Court has held that "[a] trial is a public event [and] [w]hat transpires in the court room is public property."[41] Additionally, the Supreme Court has noted that "the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."[42]

Defendants seek dismissal of Palowsky's Section 1983 claim, arguing that they are entitled to absolute immunity.[43] "Despite the broad terms of [Section] 1983," the

---

[39] 42 U.S.C. § 1983.
[40] *See Wilson v. Dallas Cnty. Hosp. Dist.*, 715 F. App'x 319, 323 (5th Cir. 2017).
[41] *Craig v. Harney*, 331 U.S. 367, 374, 67 S. Ct. 1249, 1254, (1947).
[42] *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597, 98 S. Ct. 1306, 1312 (1978).
[43] R. Doc. 16-1 at 19, 23.

Supreme Court "has long recognized" that "long-established absolute immunity" doctrines were not abrogated by the statute.[44] Judges are entitled to absolute immunity from claims arising out of all acts performed in the exercise of their judicial functions.[45] The immunity shields a judge unless he or she acts in the clear absence of jurisdiction over the subject matter or in a non-judicial capacity.[46] This immunity applies however erroneous the act and however evil the motive.[47]

As a derivative of this immunity, "other necessary participants in the judicial process are entitled to absolute quasi-judicial immunity."[48] "Absolute quasi-judicial immunity protects officials that 'perform functions comparable to those of judges and prosecutors.'"[49] In determining whether an official is entitled to absolute quasi-judicial immunity, courts must take a "functional approach" and look to "the nature of the function performed, not the identity or title of the actor who performed it."[50] The Fifth Circuit has held that "[c]lerks have absolute quasi-judicial immunity from damages for civil rights violations when they perform tasks integral to the judicial process."[51]

---

[44] *Rehberg v. Paulk*, 566 U.S. 356, 361, 132 S. Ct. 1497, 1502 (2012).
[45] *Brewer v. Blackwell*, 692 F.2d 387, 396 (5th Cir. 1982).
[46] *Mireles v. Waco*, 502 U.S. 9, 11-12, 112 S. Ct. 286, 288 (1991).
[47] *Johnson v. Kegans*, 870 F.2d 992, 995 (5th Cir. 1989).
[48] *LaFrance v. New Orleans City*, No. CV 16-14439, 2017 WL 1050495, at *3 (E.D. La. Mar. 17, 2017) (quoting *Kirkendall v. Grambling & Mounce, Inc.*, 4 F.3d 989 (5th Cir. 1993)).
[49] *Da Vinci Inv., Ltd. P'ship v. Parker*, 622 F. App'x 367, 373 (5th Cir. 2015) (quoting *Beck v. Tex. Bd. of Dental Exam'rs*, 204 F.3d 629, 634 (5th Cir. 2000)).
[50] *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993).
[51] *Evans v. Suter*, 260 F. App'x 726, 727 (5th Cir. 2007).

1. **Section 1983 Allegations Against Defendant Bond.**

Palowsky alleges that Defendant Bond violated his right to access records in the Cork lawsuit when she "secretly filed" two sealed envelopes in separate volumes of the Cork lawsuit record without a date stamp or signature of a filing clerk.[52] Defendant Bond seeks dismissal of Palowsky's Section 1983 claim, arguing she is entitled to absolute quasi-judicial immunity or, alternatively, qualified quasi-judicial immunity.[53]

Palowsky asserts that "per handwritten notes on the envelopes themselves," Judge Sharp allegedly gave the envelopes to Bond.[54] Palowsky's avers that because the sealed envelopes did not contain a court order and did not bear the date stamp and signature of the filing clerk, "the secret insertion of the court documents …. was done outside any legal process."[55]

Defendant Bond maintains that the sealed envelopes were filed pursuant to a stipulated protective order and at the direction of Judge Sharp.[56] The relevant portion of the Stipulated Protective Order reads:

> Any Confidential Information submitted to the Court in connection with a motion, trial or other proceeding within the purview of this lawsuit … **shall be maintained by the Clerk of Court under seal**. Only the

---

[52] R. Doc. 1-2 at 6.
[53] R. Doc. 16-1 at 13.
[54] *Id.*
[55] *Id.*
[56] R. Doc. 16-1 at 17–19.

> Court and counsel of record for the respective parties shall have access to Confidential Information so submitted.[57]

Defendant Bond also affirms that she wrote:

> *11-12-15 - Rec'd from Judge C. Sharp, per Marie –*
> *I recorded and placed in record behind Surreply Brief*
> *Louise Bond*
> *Clerk of Court*

on the envelope.[58]

While the Court appreciates the parties' arguments regarding whether Defendant Bond complied with the Stipulated Protective Order, the relevant inquiry for the defense of absolute quasi-judicial immunity is whether Defendant Bond's actions are considered an integral part of the judicial process. Courts within the Fifth Circuit have routinely held that filing documents into the record is one task that is integral to the judicial process.[59] "Any act of destroying, removing, or concealing filings would also be part and parcel of a clerk's processing of filings. Moreover, courts have specifically held that clerks are entitled to immunity even when alleged to have destroyed filings."[60] The filing and sealing of the envelopes in the Cork lawsuit are

---

[57] R. Doc. 18-3 at 2, para. 6 (emphasis added).
[58] R. Doc. 16-1 at 19.
[59] *See, e.g.*, *Aziz v. Washington*, No. CV 22-3129, 2023 WL 8664670, at *2 (E.D. La. Dec. 15, 2023) (holding that the clerks were entitled to quasi-judicially immunity regarding the plaintiff's claims that the clerks failed to file all his exhibits into the record); *Turner v. Go Auto Ins. Co.*, 2022 WL 18283272, at *2 (W.D. La. Mar. 15, 2022) ("Plaintiff's complaints that certain documents were not properly filed by [the clerk] are barred by these immunity doctrines."); *Vann v. Mazzant*, 2021 WL 6098779, at *3 (N.D. Tex. Nov. 24, 2021) ("At any rate, a clerk's consideration of documents for filing is also an integral part of the judicial process, so quasi-judicial immunity likewise applies to any assertion that the Fifth Circuit Clerks erred in refusing to accept [plaintiff's] submissions for filing.").
[60] *Aziz v. Washington*, No. CV 22-3129, 2023 WL 8664670, at *3 (E.D. La. Dec. 15, 2023).

considered an integral part of the judicial process, and therefore, Defendant Bond is entitled to quasi-judicial immunity against Palowsky's Section 1983 claim.

### 2. Section 1983 Allegations Against Defendant Benson

Palowsky alleges that Defendant Benson violated his constitutional rights by (1) refusing to allow Palowsky to see the contents of the two sealed envelopes without a court order; (2) placing the contents of the two original envelopes into new envelopes and resealing the new envelopes without a court order; and (3) opening and copying the contents of the envelopes without Palowsky or a local reporter being present.[61] Defendant Benson seeks dismissal of Palowsky's Section 1983 claim, arguing that she is entitled to absolute immunity and qualified immunity.[62]

As indicated above, the Court must take a "functional approach" to determine whether a court official is entitled to absolute quasi-judicial immunity.[63] Consistent with the "functional approach," courts have held that clerks of court "may receive immunity in his own right for the performance of a discretionary act or he may be covered by the immunity afforded the judge because he is performing a ministerial function at the direction of the judge."[64] Therefore, clerks of court are entitled to absolute quasi-judicial immunity "from actions for damages arising from acts they are specifically required to do under court order or at a judge's direction, and only

---

[61] R. Doc. 1-2.
[62] R. Doc. 16-1 at 23.
[63] *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993).
[64] *Williams v. Wood*, 612 F.2d 982, 985 (5th Cir. 1980); see also *Cain v. City of New Orleans*, 184 F. Supp. 3d 379, 389 (E.D. La. 2016).

qualified immunity from all other actions for damages."[65] "A judicial directive that cloaks court employees with absolute immunity may be formal and official, such as a court order, or more informal, such as verbal communication from the judge."[66]

First, Palowsky alleges that Defendant Benson violated his constitutional right by refusing to allow Palowsky to see the contents of the two sealed envelopes without a court order.[67] The complaint alleges that Defendant Benson "testified that she had been instructed to not let Palowsky's counsel view the contents of the envelopes sealed without a court order executed by the current ad hoc judge in the Cork [law]suit."[68] Next, Palowsky asserts that Defendant Benson violated his constitutional right by placing the contents of the two original envelopes into new envelopes and resealing the new envelopes without a court order.[69] The complaint states, "After speaking with Judge Cox, [Defendant Benson] placed the contents of the two original envelopes in new envelopes, resealed the new envelopes without a Court Order, and filed the new envelopes in the Cork record."[70] The complaint alleges facts that support that Defendant Benson was specifically required to perform these acts at a judge's direction. Therefore, Defendant Benson is entitled to absolute quasi-judicial immunity as to the first two allegations.

---

[65] *Tarter v. Hurley*, 646 F.2d 1010, 1013 (5th Cir. 1981).
[66] *LaFrance v. New Orleans City*, No. CV 16-14439, 2017 WL 1050495, at *4 (E.D. La. Mar. 17, 2017); *Cain*, 184 F. Supp. 3d at 389.
[67] R. Doc. 1-2 at 6
[68] *Id.* at 6.
[69] *Id.* at 7.
[70] *Id.*

Lastly, Palowsky contends that Benson violated his constitutional right by opening and copying the contents of the envelopes without Palowsky or a local reporter being present.[71] On June 30, 2022, Judge Cox order Benson to unseal and copy the contents for the parties.[72] Palowsky maintains that Benson promised to unseal and open the envelopes in front of Palowsky and a local reporter, but instead, Defendant Benson unsealed and copied the contents "behind closed doors."[73]

There are no facts alleged to support that this action was taken in accordance with a court order or at a judge's direction nor does it appear that this is an integral part of the judicial process. Therefore, Benson is not entitled to absolute quasi-judicial immunity. However, this action is a "routine duty" that entitles a clerk to qualified immunity.[74] "Qualified immunity shields government officials from liability when they are acting within their discretionary authority and their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known."[75] "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense."[76]

---

[71] *Id.* at 8.
[72] *Id.* at 7.
[73] *Id.* at 8.
[74] *See Aziz v. Washington*, No. CV 22-3129, 2023 WL 8664670, at *5 (E.D. La. Dec. 15, 2023) (holding that "addressing and mailing a letter to a litigant to notify him that the court would not take action on his duplicate filing" is a "routine duty" in which a clerk may be entitled to qualified immunity); *see also*, *Williams v. Wood*, 612 F.2d 982, 985 (5th Cir. 1980) (holding that entering an order and notifying the parties is an action in which a clerk of court enjoys qualified but not absolute immunity).
[75] *Gates v. Tex. Dep't of Protective & Regul. Servs.*, 537 F.3d 404, 418 (5th Cir. 2008).
[76] *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

The doctrine of qualified immunity protects government officials sued in their individual capacities "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[77] A plaintiff must show that a defendant committed a constitutional violation and her actions were objectively unreasonable in light of a clearly established civil right.[78] "To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"[79] While the U.S. Supreme Court has recognized a general right to inspect and copy judicial records and documents, there is no constitutional right or statutory requirement to have the judicial records copied in one's presence.[80] Therefore, Benson is entitled to qualified immunity regarding the final allegation.

## C. Louisiana State Law Claims

Palowsky alleges that Defendants breached legal duties not to violate La. R.S. 14:134 (malfeasance in office), La. R.S. 14:132 (injuring public records), and/or La. R.S. 14:25 (accessories after the fact).[81]

According to Louisiana Revised Statute 13:750(B), the liability of a clerk in her official capacity for obligations of her office terminates when she ceases to hold office

---

[77] *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982).
[78] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009)
[79] *Id.* (internal citations omitted).
[80] *See Nixon*, 435 U.S. at 597, 98 S. Ct. at 1312.
[81] R. Doc. 1-2 at 3, para. 7.

14

and her successor is appointed. Palowsky's claims against Defendant Bond relate to acts that occurred prior to her retirement as Clerk of Court on July 2, 2019.[82] Therefore, any liability in her capacity as Clerk of Court was terminated at that time.

Further, in accordance with Louisiana Revised Statute 13:750.1, a clerk of court is not personally liable for any damage or loss arising out of the performance of the duties imposed upon her in any capacity or for any reason unless the damage or loss is caused by her willful, wanton, or intentional act designed to cause injury. Palowsky does not specifically allege any facts that either Defendant acted with willful, wanton, or intentional act designed to cause injury. Therefore, neither Defendant Bond nor Defendant Benson may be held liable for any alleged harm to Palowsky arising out of the performance of their duties.

### D. Claims for Damages

Palowsky seeks all damages and relief authorized by either 42 U.S.C. § 1983, the Louisiana Constitution, Louisiana Civil Code Articles 2315 and/or 1953.[83] Palowsky claims he suffered "general damages recoverable under La. Civil Code Articles 2315 and/or 1953, including without limitation, stress, anxiety, mental anguish, embarrassment, humiliation, inconvenience, unwarranted delays, unnecessary court costs, and attorney fees.[84] However, even accepting all of the

---

[82] R. Doc. 16-1 at 21.
[83] R. Doc. 1-2 at 10, para. 28.
[84] *Id.* at 10, para. 30.

15

allegations in Palowsky's petition as true, Palowsky has not sufficiently plead any facts that indicate he has suffered an actual injury due to the acts of Defendants.

First, Palowsky claims that he would be prejudiced in the Cork lawsuit if any ad hoc judge knew of the confidential judicial complaints he filed against Fourth Judicial District Court judges.[85] However, Palowsky has not alleged any facts to support a reasonable inference that the documents contained in the sealed envelopes were anything other than exhibits to his own Surreply Brief filed in 2015. Palowsky offers nothing more than speculation that these envelopes originally held his judicial complaints. Additionally, at the time the sealed envelopes were filed in the record, Palowsky had already publicly filed his petition naming five Fourth Judicial District Court judges as defendants in the Campbell litigation.[86] Any ad hoc judge in the Cork lawsuit would know of Palowsky's judicial complaints even without accessing the Cork lawsuit record. Therefore, even accepting Palowsky's allegations as true, he could not have suffered any injury because the allegedly prejudicial information was already publicly known.

Second, Palowsky has not alleged sufficient facts for the Court to reasonably infer that he suffered any injury, much less what sort of injury, due to such a short delay in receiving copies of the sealed envelopes' contents. Therefore, Palowksy did

---

[85] *Id.* at 2.
[86] R. Doc. 16-1 at 30.

not suffer damage as a result of Defendant Benson withholding the sealed documents for a period of thirty days while Palowsky obtained a court order to unseal them.

## CONCLUSION

For the reasons set forth above, the Court finds that Palowsky's Section 1983 claims against Defendants are barred by absolute and/or qualified quasi-judicial immunity. Further, Palowsky's state law claims are not plead with sufficient factual matter to state a claim for relief that is plausible on its face. Therefore, the Court **GRANTS** Defendants' Motion to Dismiss for Failure to State a Claim. A Judgment consistent with this ruling will be issued in due course.

THUS DONE AND SIGNED this 18th day of February, 2025.

**JERRY EDWARDS, JR.**
**UNITED STATES DISTRICT JUDGE**